**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket no. 2:19-cr-00030-GZS |
| MICHAEL A. LIBERTY & PAUL E. | ) | |
| HESS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON GOVERNMENT'S MOTION FOR A FOSTER HEARING**
**RE: MICHAEL A. LIBERTY**

Before the Court is the Government's Motion for a Foster Hearing (ECF No. 25). On March 18, 2019, Defendant Liberty filed his Response (ECF No. 41) to the Government's Motion. On April 4, 2019, the Court held a hearing at which both sides submitted exhibits and the Court conducted a colloquy with Liberty under oath.

To the extent that the Government's Motion requested a hearing and asked that the Court specifically inquire with Liberty regarding the topics listed in the Government's Proposed Questions (ECF No. 25-1), the Motion is GRANTED IN PART as reflected in the record of the Court's April 4, 2019 hearing. To the extent that the Government's Motion can be construed to request any other relief, the Motion is hereby DENIED.

## I.      LEGAL STANDARD

The Sixth Amendment generally guarantees the assistance of counsel to each defendant. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). One element of this right is "the right of a defendant who does not require appointed counsel to choose who will represent him." United

States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006) (citing Wheat v. United States, 486 U.S. 153, 159 (1988)). Another element of this Sixth Amendment right is "a right to conflict-free representation." United States v. Cardona-Vicenty, 842 F.3d 766, 771 (1st Cir. 2016) (quoting United States v. Hernandez–Lebron, 23 F.3d 600, 603 (1st Cir. 1994)).

When it is brought to the attention of the Court that counsel retained by a particular defendant may have a conflict, the Court has a duty "as early in the litigation as practicable, to comment on some of the risks confronted [by defendant's choice of counsel,] to insure that [the defendant is] aware of such risks, and to inquire diligently whether [the defendant] ha[s] discussed the risks with [his] attorney, and whether [he] understand[s] that [he] may retain [other] counsel." United States v. Foster, 469 F.2d 1, 5 (1st Cir. 1972). Within the First Circuit, the process for fulfilling this duty is generally referred to as a "Foster hearing."[1]

In the following section, the Court briefly lays out the applicable facts based on the evidence received at the April 4th Foster hearing, including its colloquy with Defendant Liberty.

## II.    FACTUAL FINDINGS

On February 27, 2019, Defendant Liberty was indicted on ten counts, including four counts of wire fraud, three counts of money laundering, along with one count of conspiracy to commit wire fraud, one count of money laundering conspiracy, and one count of securities fraud. These criminal charges were the result of approximately two years of investigation into the financing of an entity known as Mozido by multiple federal agencies.

---

[1] While Foster and Federal Rule of Civil Procedure 44(c) specifically contemplate joint representation of multiple defendants by a single attorney or firm, the procedure is equally applicable to successive representation, which is the potential conflict at issue here. See, e.g., United States v. Morales-Laureno, 947 F. Supp. 2d 184 (D.P.R. 2013) (noting that Foster hearings "are also conducted when a defendant's counsel has represented a former client who may be a potential witness for the government").

As part of this investigation and as relevant to the pending motion, in May 2017, Erik Abbass, Mr. Liberty's brother-in-law and personal bookkeeper, received a subpoena for documents. Abbass then retained Attorney Mina of McCloskey, Mina & Cunniff LLC ("MMC"), to represent him in connection with responding to the subpoena. Attorney Mina subsequently sent responsive documents to Assistant United States Attorney Donald Clark in three installments between June 6, 2017 and August 18, 2017. All told, Abbass, through counsel, produced over 6,000 files in response to the subpoena. The Government anticipates that some of these records may be offered as evidence at trial and that it may also call Abbass as a trial witness. MMC maintains that its representation of Abbass ended after the document production was completed. MMC presently considers Abbass a former client.

Similarly, Angela Liberty ("Angela"), who invested in Mozido and is married to a cousin of Defendant Liberty, received a subpoena for documents in May 2017. Angela retained Attorney Mina of MMC, to represent her in connection with responding to the subpoena. Attorney Mina subsequently sent 47-pages of responsive documents to Assistant United States Attorney Donald Clark on June 20, 2017. Attorney Mina also represented Stanley Liberty ("Stanley"), husband of Angela Liberty and cousin of Michael Liberty, in June 2017. At the time, Stanley was asked to appear before the Securities and Exchange Commission ("SEC") for an examination related to the SEC's investigation into the financing of Mozido. On June 28, 2017, Stanley, accompanied by Attorney Mina, sat for a transcribed interview.[2] The Government made no further requests of Stanley after this interview. As a result, MMC maintains that their representation of Stanley and Angela concluded as of July 2017. The Government represents that it does not anticipate calling either Stanley or Angela as witnesses in this matter.

---

[2] A copy of the transcript was provided for the Court's review as Sealed Government Exhibit 6.

In August 2017, MMC secured signed Consent to Waiver of Conflict of Interest Forms from Defendant Liberty, Abbass, as well as Stanley & Angela Liberty. (See Def. Exs. A-C (ECF Nos. 41-1, 41-2 & 41-3).) As acknowledged in all three signed waivers, "MMC's representation of the Libertys and of Erik Abbass was undertaken by MMC at the request and with the assistance, cooperation and financial support of Michael A. Liberty."[3] (Id. at PageID #s 176, 178, 180.) Each waiver also indicated that "based on the information presently known to MMC" the interests of these four individuals are "not adverse" and that there was not "a significant risk of a conflict of interest in connection with MMC's simultaneous representation" of all four individuals. (Id.) Nonetheless, all four indicated by signing their respective waivers that they sought to "knowingly and voluntarily" waive "any and all conflicts of interest[ ], potential, actual or otherwise." (Id. at Page ID#s 177, 179, 181.)

The Government acknowledges that it first raised the issue of a potential conflict with MMC's representation after the Indictment was filed and MMC attorneys were the only attorneys to enter an appearance on behalf of Defendant Liberty. Prior to that time, the Government represents that it did not raise any concerns about a potential conflict because it believed that MMC was acting as "local counsel" and that Defendant Liberty had additional conflict-free counsel who had attended meetings with the Government on behalf of Michael Liberty.[4]

---

[3] While the signed waivers acknowledge Defendant Liberty's role in securing MMC as counsel for Abbass as well as Angela & Stanley Liberty, the Government further represented at the hearing that MMC was paid for their representation of Abbass, Angela & Stanley from an IOLTA account that is listed in the Indictment. See Gov't Ex. 5.

[4] As noted in the Government's brief, Liberty intitially had representation by attorneys from Pepper Hamilton LLP. See Gov't Ex. 7. Thereafter, attorneys from Kasowitz Benson Torres LLP represented Liberty. In fact, both Defendant Liberty and Attorney Frawley represented to the Court that Liberty continues to receive legal advice related to this case from Kasowitz Benson Torres LLP, despite the fact that no attorney from that firm has entered an appearance in this matter.

The Government also represents that it is concerned that Stanley & Angela Liberty may be current clients of MMC based upon the fact that MMC reached out to the Mega Victims Case Assistance Program ("MCAP") on March 26, 2019. (See Gov't Exs. 8 & 9.) Beth Peterson, a MMC paralegal, made this contact in response to the Government having sent six unsolicited Victim Notification System ("VNS") notices to Attorney Mina. (See Peterson Aff. (ECF No. 48), PageID #s 198-99.) These VNS notices were intended to provide information to Stanley & Angela Liberty that the Government is required to relay to any identified potential victims in a criminal matter. The notices were apparently sent to Attorney Mina, rather than directly to Stanley & Angela Liberty, based on Attorney Mina's earlier representation of the Libertys and the Government's concerns about complying with ethics rules limiting direct communication with persons who are known to be represented by counsel. See M. R. Prof. Conduct 4.2. Nonetheless, the affidavit of Beth Peterson makes clear that MMC's efforts in March 2019 were undertaken to assist two former clients given the Government's efforts to correspond with those clients via MMC. (See Peterson Aff. (ECF No. 48), PageID #s 199-200.)

Having conducted an extensive colloquy with Defendant Liberty under oath, the Court concludes he is competent in all respects and experienced in attorney-client matters. In response to the Court's questions, Liberty exhibited a clear understanding of the specific potential conflicts related to MMC's ongoing representation of him. He also clearly indicated that he is "one hundred percent" comfortable with being represented by the MMC team that has entered its appearance in this case.

### III. DISCUSSION

The process of assessing a conflict begins with an examination of the applicable rules of professional responsibility. Here, the Court concludes that the applicable rule is Rule 1.9 of the

Maine Rules of Professional Conduct, which governs an attorney's duty to his former clients.[5] See D. Me. Loc. R. 83.3(e) (adopting the Maine Rules of Professional Conduct as the applicable standard for practice in the District of Maine). Rule 1.9 provides an explicit restriction on representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." M. R. Prof. Conduct 1.9(a).

Here, it is undisputed that the present case is, at minimum, "substantially related" to the matters in which Attorney Mina represented Erik Abbass, Angela Liberty, and Stanley Liberty. Thus, the Court's inquiry focuses only on whether the interests of Defendant Liberty are "materially adverse" to the interests of any of these three individuals. To qualify as materially adverse, the interests of Abbass, Stanley or Angela must be directly adverse to the interests of Liberty. See, e.g., United States v. Morrell-Corrada, 343 F. Supp. 2d 80, 84 (D.P.R. 2004) (citing ABA Comm. on Ethics and Professional Responsibility, Formal Op. 99–415 (1999) & In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988)). In other words, the question is whether Attorney Mina's representation of Liberty "can be justly regarded as changing sides in the matter in question"? M. R. Prof. Conduct 1.9, cmt. 2. Based on the totality of the record currently before the Court, the Court concludes Attorney Mina and his MMC colleagues have not changed sides. Alternatively, even if the Court were to find that the current interests of Defendant Liberty were materially adverse to one or more of MMC's three former clients, the record makes clear that all three former clients have given written informed consent to MMC's representation of Michael Liberty, as contemplated by Rule 1.9(a).

---

[5] While the Court appreciates the Government's concern that the conflict here should be assessed under Rule 1.7 based on MMC's outreach on behalf of Angela & Stanley Liberty in March 2019, the factual record developed at the Foster hearing leads the Court to conclude that this couple are former, not current, clients of MMC.

As the Court discussed during its colloquy with Defendant Liberty and his counsel, Rule 1.9 also restricts an attorney from revealing "confidences or secrets of a former client" or using such confidences or secrets "to the disadvantage of the former client." M. R. Prof. Conduct 1.9(c). The Court finds nothing in the record to suggest that Attorney Mina will use or reveal confidences or secrets obtained from Abbass, Stanley or Angela in the course of representing Liberty.[6] In short, on the record presented, the Court concludes that MMC's representation of Liberty does not run afoul of Rule 1.9.

Based on the entirety of the record and its colloquy with Defendant Liberty, the Court concludes that Defendant Liberty has knowingly and voluntarily waived his right to conflict-free representation in this case. Given these waivers, the Court concludes that the Government has not met its "heavy burden [of] demonstrating that disqualification is justified." In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988) (noting that "disqualification of counsel should be a measure of last resort.") (internal quotations and citations omitted).

## IV.    CONCLUSION

For the reasons just given, the Court GRANTS IN PART and DENIES IN PART the Government's Motion for a Foster Hearing (ECF No. 25).

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 10th day of April, 2019.

---

[6] The Court recognizes that it may need to revisit this issue if it appears that the Government will seek to call any of these three former MMC clients as witnesses and if MMC attorneys seek to participate in the cross-examination of any of these three former clients. On the current record, the Court concludes this scenario is, at best, a remote possibility.