## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket no. 2:19-cr-00030-GZS |
| MICHAEL LIBERTY, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER ON PENDING MOTION
## RE:  ABROGATION OF ATTORNEY-CLIENT PRIVILEGE

Before the Court is the United States' Sealed Motion for Abrogation of Attorney-Client Privilege (ECF No. 86).  For reasons explained herein, the Court GRANTS the Motion.

## I.      BACKGROUND & PROCEDURAL HISTORY

On February 27, 2019, Defendant Michael Liberty ("Defendant" or "Liberty") was indicted on ten counts including wire fraud, securities fraud, and money laundering as well as two separate conspiracy counts related to wire fraud and money laundering.  In addition to Liberty, the Indictment charges one co-defendant, Paul Hess, and also implicates, "Individual-1," who the Indictment describes as "an attorney at a law firm in Portland, Maine . . . [who] represented Liberty and various entities controlled by Liberty." (Indictment (ECF No. 1), PageID # 1.)   The Government and Defendant agree that that "Individual-1" is Attorney George Marcus of the Marcus Clegg law firm.

In relevant part, the Indictment alleges that investors in various Liberty Pass-Through Companies[1] wired money to Marcus Clegg's Interest on Lawyers Trust Account ("IOLTA") and that Marcus "caused a substantial portion of these investor funds to be paid to Liberty's friends and family or deposited into accounts controlled by Liberty." (Id., PageID # 4.) More specifically, the Indictment lists "Individual-1," i.e., Marcus, as one of the co-conspirators in the Count One wire fraud conspiracy, which is alleged to have occurred from July 2010 until about 2017. (See id., PageID #s 6-7.) Marcus is also named as a co-conspirator in the money laundering conspiracy charged in Count Seven, which allegedly took place during the same time period. (See id., PageID #s 11-12.) Additionally, in three separate counts alleging specific money laundering transactions by Liberty on November 12, 2013, February 10, 2014, and February 11, 2014, the Government charges that the electronic transfers originated from "Individual-1's IOLTA Account."[2] (Id., PageID # 12.)

As part of its investigation, on August 30, 2018, the Government obtained a search warrant for a yahoo.com email address registered to and used by Liberty. The materials obtained as a result of that search warrant were specifically reviewed by a government filter team that was tasked with screening communications between Liberty and Marcus that were subject to attorney-client privilege. All told, the filter team reviewed more than 161,000 documents. (See Gov't Motion (ECF No. 86), PageID # 1210.) Now, the filter team seeks a ruling that will allow them to produce documents initially classified as privileged to the prosecution team in this case.

---

[1] The term "Liberty Pass-Through Companies" includes Family Mobile, Mozido Investments, Mozido Invesco, Brentwood Financial, Brentwood Investments, and BRTMDO. See Gov't Motion (ECF No. 86), PageID # 1209. Additional background information regarding these companies and their relationship to Mozido, LLC can be found in Defendant's Exhibit Q (ECF No. 89-17).

[2] Apart from this criminal case, there is a related civil case in the District of Maine captioned, *Security and Exchange Commission v. Michael Liberty et al.*, Docket No. 2:18-cv-00139-JDL, which alleges multiple violations of federal securities laws. George Marcus is named as a defendant in that civil enforcement action, which currently remains stayed pending the resolution of this criminal case.

## II.      LEGAL STANDARD

"The attorney-client privilege is well-established and its rationale straightforward. By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).  However, the privilege "protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." Id.  More specifically, the First Circuit has held that "the attorney-client privilege attaches only: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 71 (1st Cir. 2011) (internal citations and quotations omitted).  It follows from this multi-part standard for application of the privilege that "[n]ot every piece of an attorney's work product falls within the attorney-client privilege." Id. at 72 ("Where, for example, an attorney acts merely as a scrivener—facilitating the consummation of a real estate transaction, passing title, and *disbursing funds*—the documents generated by those actions are typically not privileged." (emphasis added)). Generally, a client claiming the protection of the attorney-client privilege has the burden of showing the privilege applies.  See In re Grand Jury Proceedings, 802 F.3d 57, 65 (1st Cir. 2015).

Even when attorney-client privilege does apply, "[t]he crime-fraud exception 'withdraws protection where the client sought or employed legal representation in order to commit or facilitate a crime or fraud.'" United States v. Gorski, 807 F.3d 451, 460 (1st Cir. 2015) (quoting In re Grand

Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005)).  The crime-fraud exception may be used to abrogate the attorney-client privilege upon a prima facie showing: "(1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity."  Id.  (internal quotations and citations omitted).  The First Circuit has indicated that this two-part showing may be satisfied by "something less than a mathematical (more likely than not) probability that the client intended to use the attorney in furtherance of a crime or fraud."  In re Grand Jury Proceedings, 417 F.3d at 23.  Here, the Government bears the burden of establishing the applicability of the crime-fraud exception.  In re Grand Jury Proceedings, 802 F.3d at 65.

Where, as here, the Government invites the Court to conduct an *in camera* review of documents to determine the applicability of the crime-fraud exception, the Supreme Court has instructed that this Court "'should require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  United States v. Zolin, 491 U.S. 554, 572 (1989) (quoting Caldwell v. District Court, 644 P.2d 26, 33 (Colo.1982)).


III.    DISCUSSION

   A.  The Record Provides a Reasonable Basis for *In Camera* Review

The Court's analysis begins first with whether the record provides the requisite factual basis to justify the Government's requested *in camera* review.  Having reviewed the Indictment and the full factual record submitted in connection with the pending Motion, the Court readily concludes that a further review of the Government's *in camera* submission may reasonably

establish the crime-fraud exception.  First, the Government has provided evidence that, as early as 2010, Attorney Marcus was involved in securing and documenting investments in Mozido Invesco, LLC.  (See Gov't Exs. B (ECF No. 86-2) & C (ECF No. 86-3).)  Similarly, Marcus continued in the role of facilitating investments in 2013 regarding another Liberty-Pass Through Company, Brentwood Investments, LLC.  (See Gov't Ex. D (ECF No. 86-4).)  Finally, the Government has produced non-privileged evidence showing that a number of the victims of the alleged fraud in this case deposited their investments in the various Liberty Pass-Through Companies into the Marcus Clegg IOLTA account.  (Compare Gov't Ex. F (ECF No. 86-6) (list of investors in the various Liberty Pass-Through Companies with dates and amount of investment), with Gov't Ex. G (ECF No. 86-7) (a sample of the monthly bank records for the Marcus Clegg IOLTA account showing amounts wired in and out of the account).)  In the Court's assessment, the apparent role of the IOLTA account as detailed in the Government's exhibits and as further alleged in Counts Eight through Ten provides a reasonable justification for *in camera* review.  To the extent that Defendant has argued that the record does not support *in camera* review under the Zolin, the Court concludes this argument is without merit.  See, e.g., In re Grand Jury Subpoena (Mr. S.), 662 F.3d at 70 (describing Zolin's holding as establishing "a modest evidentiary threshold" to justify *in camera* review).

### B.  The Filtered Exhibits are not Covered by Attorney-Client Privilege

The Filter Team has provided the Court with a total of fourteen exhibits spanning 347 pages that it has withheld from the prosecution team based on potential attorney-client privilege (hereinafter, the "Filtered Exhibits").[3]  Based on the Court's *in camera* review of all of the Filtered

---

[3] The Filtered Exhibits are attached to the Government's Motion as Exhibits AA (ECF No. 86-9) through NN (ECF No. 86-22).  Many of these Exhibits consist of multiple documents that the filter team has combined into a single exhibit.

Exhibits, the Court initially notes that a number of these documents do not appear to be privileged at all.[4]

In the context of the pending motion regarding an evidentiary privilege, it is Liberty's initial burden to establish that the privilege applies to the Government's Filtered Exhibits. The Government aptly describes Liberty's objection to the pending Motion as offering a "fulsome defense" to the underlying charges. (Gov't Reply (ECF No. 92), PageID # 2170.) However, in opposing the Government's Motion, Liberty has made no specific objections to the Government's Filtered Exhibits or attempted to make the requisite "document by document" showing that particular communications between Liberty and Marcus are covered by attorney-client privilege. In re Grand Jury Subpoena (Mr. S.), 662 F.3d at 71. Thus, at the outset, Defendant has failed to meet his affirmative burden to establish that the privilege applies as to any Filtered Exhibits attached to the Government's Motion.

Assuming that at least some of the Filtered Exhibits could be protected by attorney-client privilege, the Government asserts that the Court should apply Gorski's two-part test and find that the privilege is abrogated by the crime-fraud exception. In Gorski, the First Circuit found that the first prong of the exception can be satisfied by the Indictment, if this charging document "provides a reasonable basis to believe that [the client] was engaged in criminal or fraudulent activity." 807 F.3d at 461; see also United States v. Gorski, No. CRIM. 12-10338-FDS, 2014 WL 4656576, at *3 (D. Mass. Sept. 12, 2014) (explaining that when the client has been indicted the privilege

---

[4] See, e.g., Exhibit HH (ECF No. 86-16) (Attorney Marcus circulating a Mozido capitalization table to Liberty and three other individuals); Exhibit II (ECF No. 86-17) at PageID #s 1735-39 (emails between Attorney Marcus, Liberty and four other individuals regarding pledge agreements and instructions for wiring to Marcus Clegg IOLTA account); Exhibit NN (ECF No. 86-22) at PageID #s 1803-14 (emails with car dealership regarding purchase of 360 Spider). See, e.g., Blattman v. Scaramellino, 891 F.3d 1, 4 (1st Cir. 2018) (noting how attorney-client privilege is waived if "otherwise privileged communications are disclosed to a third party"). Notably, Defendant seems to acknowledge that privilege does not attached to "communications between Attorney Marcus and Mr. Liberty concerning disbursements made from the IOLTA account." Def. Response (ECF No. 89), PageID # 1840.

dispute is different than "a privilege dispute arising in the course of a grand jury investigation or a civil lawsuit, where a court normally has to ascertain whether any criminal activity occurred at all, and if so to ascertain its nature and scope"). Here, the Indictment clearly provides a reasonable basis to believe that Liberty was engaged in criminal activity related to obtaining and expending investments in the various Liberty Pass-Through Companies. In short, the first prong is met.

As to the second prong, the Court must find that Liberty intended to facilitate or conceal the criminal activity charged in the Indictment via his communications with Marcus. See id. While the First Circuit has not explicitly endorsed reliance on the Indictment to satisfy this second prong, the Court reads Gorski as potentially allowing such reliance depending on the allegations of the Indictment. At minimum, nothing in Gorski suggests that the evidentiary standard is higher for the second prong as compared to the first prong.

In the pending Indictment, Attorney Marcus figures prominently as an unindicted co-conspirator in Counts One and Seven.[5] Additionally, the IOLTA account controlled by Attorney Marcus and his firm play a prominent role in Counts Eight, Nine, and Ten. Given the unique factual allegations of this Indictment, the Court initially concludes that the Indictment itself provides a sufficient basis for concluding that Liberty intended to facilitate his alleged criminal activity via his communications with Marcus and his use of the Marcus Clegg IOLTA account during the time period covered by the Indictment. See Gorski, 807 F.3d at 462 (noting that a finding on the second element does not "bear on the conduct or intent of the lawyers involved, because the crime-fraud exception is triggered by the intent of the client"). Looking beyond the

---

[5] If the Government can make the requisite showing of Marcus' status as a co-conspirator, his out-of-court statements that Defendant seeks to claim as privileged may well be admissible under Federal Rule of Evidence 801(d)(2)(E). See, e.g., United States v. Lyons, 740 F.3d 702, 718-19 (1st Cir. 2014); United States v. Petrozziello, 548 F.2d 20, 23-24 (1st Cir. 1977).

Indictment to the full record provided to the Court in connection with this Motion, the Court is likewise satisfied that Liberty intended to facilitate and conceal the activity charged in the Indictment via the communications with Marcus.[6]

Defendant argues that the Government must establish that "Liberty formed the requisite intent prior to seeking advice from Attorney Marcus, his longtime counsel for over 30 years." (Def. Response (ECF No. 89), PageID # 1836.)  Defendant further represents that Liberty sought counsel from Marcus on "hundreds of matters having nothing to do with Mozido" and "hundreds of matters involving Mozido that had nothing to do with the CPN [convertible promissory note] program." (Id.)  The Court rejects Defendant's suggestion that the client's intent must be assessed at the moment that he retained the attorney in question.  Rather, it is clear that the client's intent must be assessed at the moment he made or received the communications from his retained attorney.  In other words, the crime-fraud exception allows for the possibility that a client may retain an attorney for a legitimate reason and be entitled to have those communications covered by attorney-client privilege.  However, as the representation expands or shifts, it is possible that the intent of the client may also shift.  If that shift in the client's intent moves into using his counsel to facilitate or conceal ongoing criminal or fraudulent activity, then the attorney-client privilege is abrogated upon the client's changed intent.  Notably, the application of the crime-fraud exception does not turn on the intent of the attorney or whether the attorney's communication successfully furthered the fraud.  See In re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71, 79 (1st Cir. 1999) ("The case law dealing with the crime-fraud exception in the attorney-client context makes it transparently clear that the client's intentions control.")

---

[6] In reaching this conclusion, the Court does not suggest that the evidence on this front is enough to convict Liberty of any or all of the charged offenses.  Rather, at this stage, the Court is applying a lower standard of proof to determine an initial evidentiary issue.

Here, having conducted a "document-by-document review" of the Filtered Exhibits, the Court finds a reasonable basis to believe "that [any attorney-client] communications [found within those Exhibits] were intended by the client to facilitate or conceal the criminal or fraudulent activity" charged in the Indictment.  Gorski, 807 F.3d 451, 461-62.  Thus, the Court GRANTS the Government's Motion as to the Filtered Exhibits.[7]

### C.  The Limits of the Crime-Fraud Exception

Beyond simply seeking application of the crime-fraud exception to the Filtered Exhibits attached to the pending Motion, the Government asserts that "the crime-fraud exception should extend to the entirety of their communication related to the frauds alleged" and essentially seeks the complete removal of the attorney-client privilege from the relationship between Liberty and Marcus.  (Gov't Motion (ECF No. 86), PageID # 1226.)  In arguing for categorical abrogation, the Government claims that "it is not incumbent, or even possible, for the Court or the Government to parse through thousands of such communications for individual consideration."[8]  (Id.)

Defendant objects to this request as "overly broad" and asserts that the attorney-client relationship between Liberty and Marcus extended in time and subject matter beyond the activities alleged in the pending Indictment.[9]  (Def. Response (ECF No. 89), PageID # 1840.)  Based on this

---

[7] This ruling does not foreclose Defendant from presenting alternative evidentiary objections at trial or via a pretrial motion in limine.

[8] In the absence of any representation from the Government as to the number of documents or pages currently being withheld as privileged due to the Liberty-Marcus relationship, it is not possible for the Court to determine the feasibility of document-by-document review by the filter team or this Court.

[9] In opposing the Government's request for a broad abrogation of attorney-client privilege as to Liberty and Marcus, Defendant makes a passing reference to "Attorney Marcus's other clients (like Mozido itself)." (Def. Response, PageID # 1841.)  The Court notes that in considering the pending motion it has accepted as undisputed that Marcus had an attorney-client relationship with Liberty directly.  However, on the current record, Defendant has not established that Marcus had an attorney-client relationship with any of the corporate entities at issue here.  Moreover, even assuming that Marcus did have an attorney-client relationship with any of the Liberty Pass-Through Companies or Mozido, Defendant has not established that Liberty is the current holder of that privilege.  See, e.g., In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001) ("[T]he law is settled that a corporation's attorney-client privilege

9

range in the attorney-client relationship, Defendant argues that the Court is required to conduct "an *in camera* review of all documents the [filter team] seeks to disclose in order to determine whether they actually were made in furtherance of a crime." (Id.)

It is true that "[t]he reach of the crime-fraud exception . . . does not extend to all communications made in the course of the attorney-client relationship." In re Grand Jury Subpoena, 419 F.3d 329, 342 (5th Cir. 2005). Rather, it is "limited to those communications and documents *in furtherance of the contemplated or ongoing criminal or fraudulent conduct*." Id. at 343 (emphasis added); see also In re Richard Roe, Inc., 68 F.3d 38, 40-41 (2d Cir. 1995) ("Because a simple finding of relevance does not demonstrate a criminal or fraudulent purpose, it does not trigger the exception.") In this case, the limits of the alleged criminal conduct are clearly delineated by the Indictment, which limits both the subject matter and time. Based on the Court's review of the record submitted, the Court concludes that it appears there is "complete congruence" between Marcus Clegg's representation of Liberty on the matters outlined in the Indictment and Liberty's fraudulent purposes. Gorski, 807 F.3d at 462.

Under Gorski, it is not apparent that the First Circuit would require a pre-production, document-by-document review when the crime-fraud exception applies based on the "complete congruence" finding. See id. Nonetheless, the Court acknowledges that some circuits have required *in camera* review of all documents prior to their production under a crime-fraud exception. See, e.g., In re Grand Jury Investigation, 810 F.3d 1110, 1114 (9th Cir. 2016) ("[A] district court must examine the individual documents themselves to determine that the specific attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of the intended, or present, continuing illegality.'"); Roe, 68 F.3d at

---

may be waived by current management.") (citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349 (1985)).

41.  Likewise, the Court acknowledges Defendant's expressed concerns that the filter team might fail to perfectly assess what additional documents may be produced under the limits of this Court's ruling.

To address Defendant's concerns that further *in camera* review may be warranted to ensure compliance with the limits of this Order, the Court hereby directs the filter team to first produce to Liberty's counsel any documents or communications that it believes are no longer subject to attorney-client privilege in accordance with this Order.  Counsel shall have 14 days to review any newly produced documents and raise any requests for further *in camera* review by the Court.  Any such request shall first establish that attorney-client privilege in fact applies to the document in question under the precedents cited in this Order.  In the absence of any request by Liberty for further *in camera* review, the filter team may thereafter produce the documents to the prosecution team.

To reiterate, the Court is allowing the filter team to produce additional privileged documents and communications between Liberty and Marcus to the extent they were made in furtherance of the criminal conduct detailed in the Indictment.[10]  Defendant may seek *in camera* review of any document that the filter team proposes to produce in accordance with this ruling that has not already been subject to *in camera* review, but only upon a showing that (1) the newly produced document is in fact privileged and (2) that the document falls outside the crime-fraud exception as delineated in this Order.

---

[10] To that end, the Court also notes it has only been asked to abrogate the attorney-client privilege as to the relationship between Marcus and Liberty.  Documents or communications between Liberty and other attorneys are not at issue here and nothing in this Order shall be construed as abrogating the attorney-client privilege as to any other counsel with whom Liberty may have had an attorney-client relationship during the 2010-2017 timeframe.

## IV.   CONCLUSION

In accordance with the rulings just made, the United States' Sealed Motion for Abrogation of Attorney-Client Privilege (ECF No. 86) is hereby GRANTED.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 12th day of February, 2020.